IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOAN GARCIA,

Plaintiff,

vs.  No. 16–cv–1345–DRH

WILLIAM M. SPILLER,
KENT BROOKMAN,
TERRANCE JACKSON,
KIMBERLY BUTLER,
MS. BEABOUTT,
LORI OAKLEY,
SHERRY BENTON, and
JOHN R. BALDWIN

Defendants.

MEMORANDUM AND ORDER

**Herndon, District Judge:**

Plaintiff Joan Garcia, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests monetary compensation and injunctive relief. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## **The Complaint**

On December 7, 2015, Plaintiff was on the west recreation yard at Menard Correctional Center when a fight broke out. (Doc. 1 at 6). Shots were fired and Plaintiff immediately got down on his knees. *Id*. Plaintiff was handcuffed and taken to North 2 for allegedly disobeying a direct order by kneeling instead of lying all the way down on the ground. *Id*.

Beboutt, the internal affairs officer, interviewed Plaintiff. *Id*. Plaintiff alleges that Beboutt started to ask him questions about the altercation, but Plaintiff insisted he had been brought to North 2 only because he refused to obey a direct order, and that he was not involved in the altercation and did not know anything about it. *Id*. Beboutt then told Plaintiff that staff at Menard had been plotting to write false tickets on all the Hispanic inmates in the Latin Folks gang because of an incident in which Latin Folks members had attacked two guards in the chapel. *Id*. Beboutt then went on to tell Plaintiff that she hates Mexicans and Latinos. *Id*. She also said that Spiller had agreed to write Latin Folks false tickets, and that Plaintiff would be getting one. *Id*.

Plaintiff responded that if he got a false disciplinary report, he would write grievances on Beboutt and Spiller and file a complaint. (Doc. 1 p. 7). Beboutt told him that he would never finish the grievance procedure and that staff would destroy any grievances they found. *Id*. Plaintiff further alleges that Beboutt told him that Butler, the warden, was in on the scheme to write false disciplinary reports and that Butler had specifically instructed Spiller to grab all the Hispanic inmates he could, regardless of whether they were involved in the altercation. *Id*.

On December 15, 2015, Plaintiff received a disciplinary report for fighting authored by Spiller, exactly as Beboutt had said. *Id*. Plaintiff appeared before the adjustment committee, which was comprised of Kent Brookman and Terrance Jackson. *Id*. The disciplinary report states that Plaintiff pled guilty, which he alleges is false. (Doc. 1 at 7-8). (Doc. 1-1 at 2). Plaintiff alleges that if the

adjustment committee had reviewed the video, they would have seen that Plaintiff was not involved in the altercation. (Doc. 1 at 7). Plaintiff also alleges that if the adjustment committee had investigated him, they would have discovered that he was not a "Disciple,"[1] presumably a member of the Gangster Disciples. *Id*. Plaintiff alleges the adjustment committee found him guilty when there was no substantiated evidence to support the Spiller's report, and no indication that the confidential sources were reliable. *Id*. Plaintiff also states that Brookman had "personal reasons" for finding him guilty. *Id*. Plaintiff was sentenced to 1 year segregation, 1 year C-grade, 1 year commissary restriction, 1 month yard restriction, and 6 months no contact visits. *Id*. Butler signed off on the ticket on December 31, 2015, allegedly despite knowing that the ticket was unsubstantiated and that the adjustment committee had relied on Spiller's report alone. (Doc. 1 at 8).

Plaintiff wrote a grievance on the false disciplinary report, which Lori Oakley reviewed. *Id*. Plaintiff alleges that Oakley knew that the ticket was unsubstantiated and that the reviewing officers had relied on the reporting officer alone. *Id*. He alleges that Oakley turned a blind eye to those issues, failed to investigate, and recommended that the grievance be denied. *Id*. Butler concurred with Oakley's conclusion. *Id*. Both Oakley and Butler allegedly denied Plaintiff's request for his ticket to be expunged without good reason. *Id*. Plaintiff appealed the denial to the Administrative Review Board, where Sherry Benton and John

---

[1] The disciplinary report does not mention Disciples; Plaintiff is identified as a Latin Folk. (Doc. 1-1, p. 2).

Baldwin denied Plaintiff's grievance. *Id*. Plaintiff alleges that Baldwin and Benton knew that the ticket was unsupported by substantial evidence and that the adjustment committee had relied on Spiller's report alone. (Doc. 1 at 8-9).

Plaintiff was housed in segregation at Menard from December 7, 2015 until December 7, 2016. (Doc. 1 at 9). Plaintiff received less food in segregation and had fewer opportunities to shower. *Id*. There was excrement smeared in his cell, which smelled. *Id*. Plaintiff suffered from sleep deprivation and bed sores. *Id*. The cell was too small to exercise in, lacked ventilation, and was filthy. (Doc. 1 at 10). Plaintiff also lost many privileges, including exercise, audio-visual, visits, religious services, and law library. *Id*. The cells had mold. *Id*. Plaintiff repeatedly injured his face on the walls of his cell when he jumped off the top bunk because the cells were too small. (Doc. 1 at 11). Despite his repeated injuries, he never received medical treatment. *Id.*

## **Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 7 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

> **Count 1 –** Brookman, Jackson, and Butler violated Plaintiff's Fourteenth Amendment due process rights when they found him guilty of an unsubstantiated disciplinary infraction without properly investigating the offense, and while relying entirely on the investigating officer's report alone;

**Count 2** – Beboutt, Spiller, Butler, Brookman, and Jackson conspired to violate Plaintiff's Fourteenth Amendment due process rights when they agreed to bring and convict him on false disciplinary charges.

Plaintiff has also attempted to bring other Counts, but for the reasons elucidated below, these claims do not survive threshold review.

**Count 3** – Spiller wrote Plaintiff a false disciplinary report in violation of his Fourteenth Amendment due process rights;

**Count 4** – Plaintiff suffered from unconstitutional conditions of confinement in violation of the Eighth Amendment;

**Count 5** – Oakley, Butler, Benton, and Baldwin denied Plaintiff's grievances regarding the improper discipline in violation of Plaintiff's Fourteenth Amendment due process rights;

**Count 6** – Nippe and Vasquez improperly denied Plaintiff's grievances regarding his conditions of confinement in violation of the Eighth Amendment

**Count 7** - Nippe, Vasquez, unknown cell house nurses, and unknown cell house med techs were deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment when they ignored his repeated complaints that he hit his head while jumping off the top bunk.

As to Plaintiff's **Count 1**, prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See*

*Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007). The adjustment committee must adequately identify the evidence it relies on for its decision; it is constitutionally insufficient to merely incorporate the investigating officer's report. *Redding v. Fairman*, 717 F.2d 1105, 1114-15 (7th Cir. 1983) (citing *Hayes v. Walker*, 555 F.2d 625, 631 (7th Cir. 1977)).

Here, Plaintiff has alleged that his disciplinary hearing was constitutionally deficient because he was falsely listed as having pleaded guilty, thus depriving him of the opportunity to present a defense, and because the committee relied solely on the investigating officer's report in lieu of conducting their own investigation. This is particularly problematic here because Plaintiff has alleged that the reporting officer was engaged in a conspiracy against Hispanics, like himself. Plaintiff has made a plausible allegation that the adjustment committee failed to accord him due process.

To state a due process claim, a plaintiff must also show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.*

Here, Plaintiff has alleged that he was sent to the segregation unit at Menard for approximately 1 year, a substantial amount of time. During that time, Plaintiff alleges that he suffered from unconstitutional conditions of confinement, including exposure to toxic substances like feces and mold, poor ventilation, and a cell so small that it deprived him of exercise and caused him to suffer physical deterioration. The exposure to toxic substances and the small cell size articulate a plausible claim that Plaintiff was in a substantially more restrictive

environment.  At this stage, Plaintiff has adequately pleaded that he was deprived of a liberty interest, and so **Count 1** will be permitted to proceed.

**Count 2** will also survive.  Civil conspiracy claims are cognizable under § 1983.  *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under section 1983).  "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002).  *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002).  Conspiracy is not an independent basis of liability in §1983 actions.  *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).  "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).

Here Plaintiff has alleged that the due process violations that occurred were the end result of a conspiracy designed to put Hispanic inmates in segregation. He alleges that Beboutt, Spiller, and Butler conspired to write false disciplinary tickets against Hispanic inmates.  He further alleges that Beboutt told him that there was agreement between Beboutt, Spiller, and Butler to effect this result, and that Jackson and Brookman adopted Spiller's corrupt report without doing their own investigation.  As Plaintiff has adequately pleaded 1) the violation of his due process rights; and 2) agreement between conspirators to violate his rights, his

claim for conspiracy survives threshold review. **Count 2** shall be permitted to proceed.

But all of Plaintiff's other claims must be dismissed at this time. Plaintiff's claim against Spiller for writing a false disciplinary report will be dismissed with prejudice, because a false disciplinary report standing alone does not violate Plaintiff's due process rights. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). The Seventh Circuit Court of Appeals has reasoned that the due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses. A hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report. *Hawkins v. O'Leary*, 729 F. Supp. 600, 602 (N.D. Ill. 1990), relying on *Hanrahan v. Lane*, supra, 747 F.2d at 1141. The procedural requirements of a disciplinary hearing protect prisoners from arbitrary actions of prison officials. *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987). This claim is distinguishable from Plaintiff's conspiracy claim, where the allegedly false disciplinary report may be used as evidence of the conspiracy claim. **Count 3** will be dismissed with prejudice.

Plaintiff has also pleaded certain facts that may establish a conditions of confinement claim in **Count 4**. In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294,

302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component of an Eighth Amendment claim. The subjective component requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). The relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such

circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

While Plaintiff has described certain conditions that may satisfy the objective component, he has not alleged that he told any of the named defendants about these conditions or alleged facts which raise an inference that any defendants were subjectively deliberately indifferent. He has not alleged that any of the Defendants were responsible for his cell placement or the condition of the cell. Plaintiff has failed to adequately plead facts that would make it plausible that any defendant had the relevant state of mind. **Count 4** will be dismissed without prejudice at this time for failure to state a claim.

In **Count 5**, Plaintiff has alleged that he wrote grievances on the conditions of confinement issue. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Some personal involvement beyond the grievance process is necessary. *Haywood v. Hathaway*, 842 F.3d 1026 (7th Cir. 2016) (finding warden had personal involvement where, in response to grievance, he gave written instructions to the prison's engineering staff, received a report, and visited the scene, after

which he explicitly found no further problems existed). Here, Plaintiff has alleged that Oakley, Butler, Benton, and Baldwin should be held liable because they denied Plaintiff's grievances regarding the improper disciplinary hearing, but there is no case law that establishes liability for denying a grievance alleging a due process violation. Although Plaintiff has alleged that Butler was involved in his other due process Counts, allowing this claim to proceed against her would be duplicative as those claims are proceeding against her. None of the defendants in **Count 5** have any personal involvement in the due process violation that Plaintiff complains of, and this claim will be dismissed with prejudice.

The same analysis holds true for **Count 6**. As discussed above, Plaintiff failed to name any defendants in connection with his conditions of confinement claim. He did allege, however, that he filed grievances on the issue to Vasquez and Nippe. But that is not sufficient to show personal involvement in this case. Plaintiff has also failed to allege that any of the defendants named in **Count 6** took the kinds of steps that the Seventh Circuit outlined in *Haywood* that would establish personal involvement. Specifically, he has not alleged that Nippe and Vasquez had any authority over Plaintiff's cell assignment or any ability to address the issues he raised institutionally. *See Estate of Miller by Chassie v. Marberry*, 847 F.3d 425 (7th Cir. 2017).

Even if the grievances were sufficient to establish personal involvement in a conditions of confinement case, the Court would still dismiss this claim without prejudice because Plaintiff did not list Nippe or Vasquez in the caption of this case

or as defendants. Pursuant to Fed. R. Civ. P. 10, a plaintiff must name all parties in the case caption. *See also Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"). Therefore, failure to list an actor as a named defendant is grounds for dismissing any potential claims against that actor.

**Count 7** will also be dismissed in part for the same reason because Plaintiff failed to name Nippe, Vasquez, or any of the unknown nurses and med techs in the caption. Fed. R. Civ. P. 10. But more problematically, Plaintiff has failed to adequately plead that he suffered from a serious medical need. In order to state a clam for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eight

Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Here, Plaintiff alleges that his cell was so small that when he jumped off the top bunk, he was at risk for hitting his head against the wall.  Plaintiff suggests this happened multiple times, but as the means of injury was entirely within his control, the Court finds that it is not plausible that Plaintiff suffered from a serious medical need, if the injury was so slight as to cause him to continue with the behavior causing the injury.  Moreover, methods of treating minor bruising and contusions are extremely limited.  Plaintiff has not specified what medical treatment he believes he was entitled to, but his allegations make it implausible that he required medical attention or that physician or layperson would have thought he required care.  Given the description of the injury, it is much more likely that it resolved without resort to medical care.  The Court therefore dismisses **Count 7** without prejudice for failure to list the defendants in the case caption and because Plaintiff has not adequately pleaded a deliberate indifference claim.

### Disposition

   **IT IS HEREBY ORDERED** that **Counts 1 and 2** survive threshold review.  **Counts 4 and 7** are **DISMISSED without prejudice**.   **Counts 3, 5-6** are **DISMISSED with prejudice**.   Defendants Oakley, Benton and Baldwin are **DISMISSED without prejudice**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Beboutt, Spiller, Butler, Brookman, and Jackson:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or  counsel.  Any paper

received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all

unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Signed this 25th day of February, 2017.

Judge Herndon
2017.02.25
08:41:28 -06'00'

**UNITED STATES DISTRICT JUDGE**